UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 07-200-GFVT

GREGORY THOMAS,                                                    PLAINTIFF,

V.                           **MAGISTRATE JUDGE'S REPORT
                              AND RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                   DEFENDANT.

## I. INTRODUCTION

Plaintiff, Gregory Thomas, brings this action under 42 U.S.C. § 405(g) and 5 U.S.C.A. § 706, to challenge the Defendant Commissioner's final decision denying his application for Supplemental Security Income ["SSI"]. [R. 1]. This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 16]. Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it is recommended that Thomas' Motion for Summary Judgment [R. 12] be denied, Defendant Commissioner's Motion for Summary Judgment [R. 14] be granted, and Judgment be entered affirming the final decision of the Commissioner.

## II. FACTS & PROCEDURAL HISTORY

The Plaintiff was born in 1958 and was 40 years old at the alleged onset date of his disability. [Tr. at 423]. He is married and has six children. [Tr. 743]. Thomas has a tenth-grade education, and completed one year of welding school. [Tr. 446]. He lists his employment history as follows: a welder-fabricator, spray painter, and set up operator from 1975-1996, and a mechanic and tractor-trailer technician from 1996-1999. [Tr. 76].

Thomas alleges that his disability began on September 7, 1999. [Tr. 423]. In the Disability Report, Form SSA-3368, he claimed that he was unable to work as a result of a lower-back injury, arthritis, and bone spurs in the neck and lower-back. [Tr. 67]. He also complains of severe pain, depression, hallucinations, and bowel and bladder incontinence. [Tr. 749-54].

As a result of his impairments, the Plaintiff filed for disability benefits on April 1, 2001. [Tr. 426]. His claims were denied initially and on reconsideration. [Tr. 25, 26]. Following the denial, he properly requested a hearing in front of an Administrative Law Judge ["ALJ"]. [Tr. 37]. On August 6, 2003, a hearing was held in front of ALJ Larry Termin in Cincinnati, Ohio. [Tr. 437]. During the hearing, the ALJ sought testimony from Thomas and a vocational expert. [Id.]

The ALJ ruled against the Plaintiff in a written decision dated September 26, 2003. [Tr. 15-23]. Thomas appealed, arguing that the ALJ erred in discounting the opinions of his treating physicians. [Tr. 518]. The U.S. District Court for the Eastern District of Kentucky reversed, finding that the ALJ failed to articulate good reasons for discounting the opinions of treating physicians Dr. Simons and Dr. Gallus, and to properly assess Thomas' complaints of pain under 20 C.F.R. § 404.1529. [Tr. 521-23]. U.S. District Judge William O. Bertelsman remanded the case for further consideration. [Tr. 524].

In accordance with the U.S. District Court's remand order, a second hearing was held before ALJ Termin on March 9, 2007. [Tr. 735-94]. The Plaintiff was present and represented by counsel, the Hon. Curtis Hatfield. [Tr. 735]. During the hearing, the ALJ sought testimony from Thomas, his wife Teresa Thomas, medical expert Dr. Ron Koppenhoefer, and vocational expert Robert Breslin. [Tr. 735].

Following the hearing, the ALJ ruled against the Plaintiff in a written decision dated August

2

14, 2007.  [Tr. 485-504].  The ALJ found that the Plaintiff suffered from the combined severe impairments of: lumbosacral degenerative disc disease, cervical spine degenerative disc disease, chronic pain syndrome, borderline intellectual functioning; depression; and anxiety.  [Tr. 488].  Despite these impairments, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  [Tr. 489].  Continuing with his evaluation, the ALJ found that Thomas had the residual functional capacity to:

> "perform the requirements of work activity except as follows: He can lift/carry/push/pull up to 10 pounds occasionally and up to 5 pounds frequently. He can in combination stand and/or walk for up to 2 hours per 8-hour workday (for up to 30 minutes at a time, with the option to then sit for 10 minutes). He can sit 8 hours per 8-hour workday (for 2 hours at a time, with the option to then stand for 5 minutes). He can only occasionally stoop, kneel, crouch, and climb ramps/stairs. He should not crawl, climb ladders/ropes/scaffolds, perform work requiring the forceful use of the lower extremities, operate automotive equipment, work at unprotected heights, or work around hazardous machinery. The claimant is unable to remember or carry out detailed instructions. He cannot interact with the general public, and cannot interact more than occasionally with coworkers or supervisors."

[Tr. 491].  The ALJ found that Thomas was unable to perform any past relevant work [Tr. 502], but that "considering [his] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform."  [Tr. 503].  Based on these findings, the ALJ determined that the Plaintiff did not suffer from a "disability" as defined by the Social Security Act.  [Tr. 504].

On December 12, 2007, Thomas initiated the present action by filing a complaint in the U.S. District Court for the Eastern District of Kentucky.  [R. 1].  In his motion for Summary Judgment [R. 12], the Plaintiff argues that the ALJ's decision should be reversed because he improperly disregarded the opinions of the treating physicians.  [Id. at 30-32].  The Defendant-Commissioner

3

responds that the ALJ's decision is supported by substantial evidence.  [R. 14 at 4].

### III.  STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence.  42 U.S.C. § 405(g)(2006); see also, Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004) (internal quotations and citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review is intended to prevent the reviewing court from substituting its judgment for that of the ALJ.  So long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations and citations omitted).  Sixth Circuit precedent suggests that a finding of "no substantial evidence," and potential reversal of the agency decision, would be appropriate in situations where the ALJ: ignores uncontested, compelling evidence for one side; makes no express findings on witness credibility; or makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also, Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975).  Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

4

## IV.  ANALYSIS

To determine whether a claimant is "disabled" within the meaning of the Social Security Act, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920.  Step one examines the work activity of the claimant to determine whether he is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4).  In step two, the ALJ determines whether the claimant has a medically determinable "severe impairment" or combination of impairments that qualify as severe.  Id.  Step three examines whether the claimant's impairments meet the criteria set forth in the regulations to categorize an individual as "disabled."  Id.  The fourth step examines whether the claimant retains any "residual functional capacity" ["RFC"] and whether the claimant can return to his past relevant work.  Id.  Finally, if the claimant is unable to return to any past relevant work, it must be determined whether he has the residual functional capacity to do any other work.  Id.  The Sixth Circuit Court of Appeals has summarized the burdens of proof involved in this process as follows:

> Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry...the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003).

In the present action, Thomas argues that the ALJ erred in discounting the opinions of his treating physicians.  [R. 12 at 30].  Under the "treating physician rule," an ALJ generally must give "greater weight" to the opinions of treating physicians than those of other physicians.  See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 536 (6th Cir. 1981).  Such deference is only

5

accorded, however, when the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." Gaskin v. Commissioner of Social Sec., 280 Fed.Appx. 472, 474 (6th Cir. 2008) (unpublished) (citing 20 C.F.R.§ 404.1527(d)(2)).

When the ALJ rejects the opinion of a treating physician, he must give good reasons for doing so. See Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). The SSA regulations set forth certain factors the ALJ must consider: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the treating physician's opinion, (4) the consistency of the physician's opinion with the record as a whole, and (5) the specialization of the physician. 20 C.F.R.§ 1527(d)(2). This reason-giving requirement serves two purposes:

> First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. Second, the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule.

Rogers at 242-43.

Having reviewed the record, the Court finds that the ALJ supplied sufficient reasons for disregarding the treating physicians' opinions. In particular, the ALJ focused on the third and fourth factors set forth above, supportability and consistency with the record. For instance, the ALJ first noted that the medical record did not support Thomas' statements concerning the intensity, persistence, and limiting effects of his impairments:

> There are no EMG or NCV studies to confirm any radiculopathy or neuropathy. Further, as previously noted, although [Plaintiff] reports subjective evidence of

6

> neural impingement, such as decreased sensation, weakness, and pain, the claimant
> has not demonstrated objective clinical signs such as muscle atrophy, consistently
> positive straight leg raising, strength deficit, or bowel and bladder control problems
> (although he testified to incontinence at the hearing, there is no such complaint in the
> record).  Even the claimant's subjective report of sensory loss is not consistent across
> examinations.

[Tr. 494].  After noting that Thomas' statements concerning the severity of his impairments were not

supported by the record, the ALJ specifically addressed the opinions of his treating physicians.  The

following is a brief summary of the ALJ's analysis.

A.  Dr. Simons

    With respect to the Plaintiff's pain specialist, Dr. Simons, the ALJ observed that there were

no findings in the record to confirm his notations that Thomas had poor range of neck and spine

motion, pain with straight leg raising, tenderness in the hips, decreased pinprick in the arms and legs,

and diminished motor strength.  [Tr. 494].  The ALJ further observed that, according to Dr. Simons'

notes, Thomas actually showed marked improvement while under his care:

> Under Dr. Simons' care, the claimant continued to report improvement with
> injections and medication, with only some residual lower back, neck, and shoulder
> pain.  Dr. Simons stated "he is really doing better with medications, except he has run
> out early on methadone."   In late 2002, the claimant said he had even been out to
> hunt a little, which he had not been able to do for months.  Dr. Simons continued to
> administer nerve blocks, and the claimant appeared "much more loose and supple"
> in December 2002 despite continuing complaints of pain.  The claimant admitted his
> headaches were not as severe, and his neck and shoulder pain was not as bad.

[Tr. 495 (citations to record omitted)].  Thus, the ALJ found that the medical record did not support

the degree of limitation indicated by Dr. Simons.[1]

---

[1] There is confusion in the record as to an RFC assessment dated August 12, 2003.  [Tr. 343-45].  In the
ALJ's original decision denying benefits, he attributed this RFC assessment to Dr. Simons.  [see Tr. 20].
However, in the ALJ's written decision of August 14, 2007, he attributed this RFC assessment to Dr. Haj-
Hamed.  [see Tr. 499].  The Court will discuss the ALJ's analysis of this RFC assessment in section C, *infra*.

B.  Dr. Burke

With respect to Dr. Burke, the ALJ observed that he failed to provide any objective findings

to confirm Thomas' complaints of debilitating pain:

> Dr. Burke's notes, as with the other Summit Medical Group notes, do not document
> any objective findings that could reasonably be associated with the claimant's alleged
> extreme pain.  Instead, the notes typically simply record the claimant's subjective
> allegations of pain, with only a few other findings such as tenderness to palpatation
> and restricted range of motion.

[Tr. 495-96].  As there were few objective findings to support Dr. Burke's RFC assessment, the ALJ

rejected it:

> Dr. Burke also provided a residual functional capacity assessment.  He stated the
> claimant could lift less than 10 pounds occasionally due to lumbar tenderness with
> pain radiating to the bilateral legs, and "weakness in the bilateral legs."  Again, the
> general record shows no true weakness, and there is no evidence of radiculopathy.
> Dr. Burke's notes also do not support this assertion.  In fact, a note from February
> 2005 stated that the claimant had 5/5 strength in the lower extremities.  No other note
> mentions weakness of any kind...

[Tr. 499].  Thus, the ALJ found that the record did not support Dr. Burke's assessment of Thomas.

C.  Dr. Haj-Hemed

With respect to the Plaintiff's primary-care physician, Dr. Haj-Hamed, the ALJ observed that

he, too, failed to document objective findings to support his opinion.  Specifically, the ALJ noted

that there were no findings to support the restrictions contained in his RFC assessment, and that the

explanations provided for each restriction were "based entirely on subjective complaints of pain and

tenderness."  [Tr. 499].  Moreover, the ALJ accorded Dr. Haj-Hamed's RFC assessment little

credibility, as his Ohio and Kentucky medical licenses were inactive due to federal and state

investigations which revealed that he had illegally prescribed controlled substances.  [Id.].

D.  Dr. Gallus

8

As with Dr. Burke and Dr. Haj-Hamed, the ALJ noted that Dr. Gallus failed to document objective findings to support the limitations contained in his RFC assessment.  [Tr. 499]. Accordingly, the ALJ found that the medical record did not support Dr. Gallus' opinion.

Finally, in rejecting the opinions of the treating physicians, the ALJ relied upon the testimony of medical expert Dr. Koppenhoefer.  Dr. Koppenhoefer testified that he had reviewed the entire record, and found that it did not support the treating physicians' opinions.  [see Tr. 763-64, 777-80]. Specifically, he noted that although several independent exams were performed on the Plaintiff's neuromuscular system, none of them revealed any abnormality.  [Tr. 764].  Further, he testified that he found no objective evidence in the record to support Dr. Simons' findings of radiculopathy.  [Tr. 498, 767-68].  According to Dr. Koppenhoefer, Thomas' alleged physical limitations were  not proportional to the objective findings in the record.  [Tr. 498, 766].

As the foregoing summary of the ALJ's decision demonstrates, he articulated sufficient reasons for disregarding the treating physicians' opinions.  Specifically, the ALJ noted that they either lacked evidentiary support, or were positively contradicted by other evidence in the record. As for the ALJ's rejection of Dr. Little's, Dr. Caudill's, and Dr. Fritzhand's opinions, the Court observes that these physicians did not actually treat the Plaintiff, and thus they do not come within the purview of the treating physician rule.  Nonetheless, the ALJ cited ample reasons in support of his decision to reject their assessments.  [see Tr. 490, 496, 501-02].

Having reviewed the record, the Court finds that the ALJ complied with the treating physician rule, and that his decision to deny benefits was supported by substantial evidence. Accordingly, Thomas' claim of error must fail.

9

<u>V. CONCLUSION</u>

For the foregoing reasons, it is recommended that the Plaintiff's Motion for Summary Judgment [R. 12] be denied, the Defendant Commissioner's Motion for Summary Judgment [R. 14] be granted, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. <u>United States v. Campbell</u>, 261 F.3d 628, 632 (6th Cir. 2001); <u>Bituminous Cas. Corp. v. Combs Contracting Inc.</u>, 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004); <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)©); Fed. R. Civ. P. 72(b).

Signed February 20, 2009.



**Signed By:**

_**Edward B. Atkins**_   𝓔βA

**United States Magistrate Judge**